HANES COMPANIES, INC., Plaintiff,

v.

Harold R. RONSON and Ronco Enterprises, Inc., Defendants,

and

HANES COMPANIES, INC., Plaintiff,

v.

Harold R. RONSON, Joanne Ronson, Norma R. Koppel, Ronco Enterprises, Inc., Jonor Enterprises, Inc., and Savoy Trading Co., Inc., Defendants.

Civ. Nos. C–87–298–WS, C–87–482–WS.

United States District Court, M.D. North Carolina, Winston–Salem Division.

June 7, 1988.

Michael E. Ray, Kurt C. Stakeman, Lori E. Privette, Winston–Salem, N.C., for plaintiffs.

Clifford Britt, Daniel R. Taylor, Jr., Winston–Salem, N.C., Lawrence M. Rosenstock, New York City, for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

A suit that began with garden variety allegations of fraud and misrepresentation has blossomed into complex litigation presenting questions which are no bed of roses for the court. Several Defendants have raised thorny issues regarding personal jurisdiction, and these cases are further entwined with pending motions to consolidate, to transfer, and to dismiss pursuant to the doctrine of abatement. Guided by the tenets of due process and the illusive goal of a "just, speedy, and inexpensive determination of every action," Fed.R.Civ.P. 1, the court will weed this procedural thicket by denying the motion to dismiss for lack of jurisdiction, granting the motion to consolidate, denying the motion to transfer, and denying the motion to dismiss based on abatement.

### FACTS AND PROCEDURAL HISTORY

This litigation grows out of Hanes's purchase of the assets and goodwill of Harold Ronson's business. On August 5, 1986, Hanes and various Defendants executed numerous agreements which may be summarized as follows:

(1) An asset purchase agreement which transferred to Hanes the assets of W. Lowenthal Co., Inc. Lowenthal was wholly owned by Ronson and traded in surplus or waste textile fibers. After the sale of its assets, W. Lowenthal Co., Inc., changed its name to Ronco Enterprises, Inc., and "Lowenthal" became a division of Hanes. This agreement was signed by Ronson and provides that it is governed by North Carolina law;

(2) An asset purchase agreement which transferred to Hanes the assets of W. Lowenthal Export, Inc. ("Export" and "Export Agreement"). Export served as Lowen-

thal's international sales arm. Its ownership was split between Joanne Ronson and Norma Koppel, Harold Ronson's daughters. After this sale Export changed its name to Jonor Enterprises, Inc. This agreement was signed by Joanne Ronson as president of Export, Norma Koppel as secretary of Export, and by both daughters as the individual shareholders of Export. The Export Agreement also provides that it is governed by North Carolina law;

(3) A lease between Lowenthal and Hanes of a fiber-processing plant owned by Lowenthal and located in Rock Hill, South Carolina;

(4) A lease between Harold Ronson and Hanes of a warehouse owned by Ronson and located beside the plant in Rock Hill, South Carolina;

(5) A non-competition agreement between Hanes, Lowenthal, and Ronson; and

(6) An employment agreement between Hanes and Ronson whereby Ronson would preside over the new Hanes fiber business.

Hanes began this litigation on April 9, 1987, by filing a three-count complaint against Ronson and Ronco in the Superior Court of Forsyth County (Hanes I). Hanes alleged that these two Defendants had committed fraud, misrepresentation, and mutual mistake in the negotiation and execution of the two leases described above. The suit was bottomed on Hanes's contention that Ronson had substantially overstated the total square footage contained in the plant and the warehouse located on the leased property.

The Defendants removed Hanes I to this court based on diversity on May 12, 1987. On June 18, 1987, the Defendants filed the pending motion to transfer to the Rock Hill Division of the United States District Court for South Carolina. On June 19, 1987, they filed their answer to the complaint. This answer generally denied the complaint's allegations and, asserting that the two leases were part of a larger series of transactions, alleged five counterclaims for breach of the leases, breach of the non-competition agreement, and misrepresentation.

Rather than asserting counterclaims in its reply, or moving to amend its complaint, Hanes filed a new complaint in this court on July 24, 1987 (Hanes II). This complaint called the entire series of agreements into question and named as defendants Ronson, Ronco, Joanne Ronson, Norma Koppel, Jonor, and Savoy Trading Co., Inc. In sum, Hanes II alleged that most of these Defendants had breached one or more of the agreements described above and that all of these Defendants had conspired to interfere with Hanes's contracts and also committed unfair trade practices under N.C. Gen.Stat. § 75–1.1. Contemporaneously with this second complaint, Hanes filed a motion to consolidate the two cases it had pending against Ronson and Ronco.

The Defendants in Hanes II responded by filing a pair of motions to dismiss. The first of these motions seeks to dismiss Hanes II in its entirety based on the doctrine of abatement. Alternatively, Defendants Joanne Ronson, Norma Koppel, and Savoy Trading have filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Ms. Ronson and Ms. Koppel filed affidavits in support of the latter motion, and Hanes has filed responses to interrogatories and portions of Mr. Ronson's deposition. The court also has before it the two asset purchase agreements, the leases and other contracts, an affidavit from Harold Ronson, and an affidavit from Donald H. Bernstein, an officer from Hanes. The court will address the jurisdictional issues first.

## DISCUSSION.

### I. *Personal Jurisdiction*

#### A. *Joanne Ronson and Norma Koppel*

In this diversity case the court must perform a two-step analysis to determine whether personal jurisdiction exists. The first consideration is whether North Carolina statutes permit the exercise of long-arm jurisdiction over the Defendants. If so, the court must then determine whether the exercise of that jurisdiction comports with due process. *Vishay Intertechnolo-*

*gy, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1064 (4th Cir.1982).

Hanes seeks jurisdiction under N.C.Gen. Stat. § 1–75.4(1)(d), which grants jurisdiction "[i]n any action ... against any party who when service of process is made ... [i]s engaged in substantial activity within this State." Relying on *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977), Hanes argues that this statutory long-arm jurisdiction is co-extensive with the limits of due process; thus the court need only consider the latter of the two inquiries. The Defendants respond that such a reading makes the remainder of the long-arm statute superfluous.

■ Although the court agrees with the Defendants' logic, the court cannot ignore the State Supreme Court's construction of the statute. "By the enactment of G.S. § 1–75.4(1)(d) ... the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon,* 291 N.C. at 676, 231 S.E.2d 629. The *Dillon* court summarily held this section applicable to the defendant and proceeded directly to the constitutional issue. *Id.* Thus, when a plaintiff relies on Section 1–75.4(1)(d), the question of statutory authorization "collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C.1979); *accord Waller v. Butkovich,* 584 F.Supp. 909, 926 (M.D.N.C.1984); *Western Steer–Mom 'N' Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 264 (W.D.N.C.1984); *Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 426 (M.D.N.C. 1977); *J.M. Thompson Co. v. Doral Mfg.*

*Co., Inc.,* 72 N.C.App. 419, 424, 324 S.E.2d 909, 913, *disc. rev. denied,* 313 N.C. 602, 330 S.E.2d 611 (1985).[1]

Turning to the issue of due process, the constitutional touchstone is whether the non-resident Defendants have established "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 [1940] ). "Minimum contacts" means that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A single act or contract which creates a "substantial connection" to a forum can support jurisdiction, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), but occasional acts which create only an "attenuated" connection do not. *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 568. Whether phrased in terms of a "fair warning," *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring), or "foreseeability," *Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567, in each case the defendant must perform some act by which he "purposefully avails [himself] of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

1. Hanes also argues that jurisdiction is proper under N.C.Gen.Stat. § 1–75.4(3), which authorizes jurisdiction "in any action claiming injury to person or property ... arising out of an act or omission within this State by the defendant." *See Vishay,* 696 F.2d at 1065–68 (holding jurisdiction proper and constitutional when exercised pursuant to two similar statutory provisions, Section 55–145[a][4] [corporation's tortious conduct within North Carolina] and Section 1–75.4[4][a] [injury and solicitation within

North Carolina] ). Additionally, the court notes that since the export agreement was executed and performed in Charlotte, North Carolina, another statutory basis for personal jurisdiction over these two individuals may exist in Section 1–75.4(5)(c). This section grants jurisdiction in any action which "arises out of a promise, ... by the defendant to deliver or receive within this State, ... goods, documents of title, or other things of value."

In giving further content to these broad principles the court is guided by the analysis employed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Like the present case, *Burger King* involved a resident corporation seeking specific jurisdiction over a nonresident individual based on a single contract.[2] In deciding that jurisdiction was proper, the *Burger King* Court engaged in yet another dual inquiry. The Court began by determining whether the defendant had established the requisite minimum contacts, then went on to consider these contacts "in light of other factors"—the burden on the defendant, the forum state's interest, the plaintiff's interest, judicial efficiency, and substantive social policy—to conclude that the exercise of personal jurisdiction comported with fair play and substantial justice. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184–85.

On the first part of the inquiry, the *Burger King* Court had little trouble concluding that the defendant had minimum contacts with Florida despite the fact that he had never entered the state. Although a contract with a Florida corporation alone could not establish sufficient contacts, an evaluation of the contract's terms, prior negotiations, future consequences, and course of dealing demonstrated a substantial connection to the forum. *Burger King*, 471 U.S. at 479–82, 105 S.Ct. at 2185–87; *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. In particular, the contract was governed by Florida law and established a twenty-year franchise relationship with strict regulation from Burger King's Florida headquarters. These factors reinforced the defendant's deliberate affiliation with Florida and the reasonable foreseeability of litigation there. With the defendant's minimum contacts thus established, the Court found that the balance of other factors did not outweigh the substantial connection or "establish the *unconstitutionality* of Flor-

ida's assertion of jurisdiction." *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187 (emphasis in original).

Applying this analysis to the present case, the court observes that Joanne Ronson and Norma Koppel were parties to the Export agreement as individual shareholders and as Export's officers. The Export agreement provides for closing in Charlotte, North Carolina, on August 5, 1986, and was in fact closed in Charlotte. Export Agreement, ¶ 5; Affidavit of Joanne Ronson p. 4. The agreement was largely performed in Charlotte when Hanes paid the $328,000.00 and received in return the various documents transferring ownership of Export's assets. Export Agreement, ¶ 5. Further, while it seems that neither Joanne Ronson nor Norma Koppel participated in negotiating the transaction, they were aware or should have been aware that a large part of the bargaining occurred in North Carolina.

Although the Export agreement does not create a tightly-controlled, twenty-year franchise relationship, the parties nonetheless assumed continuing responsibilities toward one another. In particular, Joanne Ronson and Norma Koppel, as individual shareholders, made various "representations and warranties" to Hanes, including the representation that is largely the basis of the current suit—that none of them had any undisclosed interest in a business which competed with Export. Export Agreement, ¶ 6(R)(iii). Joanne Ronson and Norma Koppel also agreed, as individual shareholders, to indemnify Hanes for various losses or damage. Export Agreement, ¶ 11. Finally, the Export Agreement clearly provides that it is governed by North Carolina law. For all of these reasons, the court concludes that the Export agreement created a substantial connection to North Carolina which supports this court's exercise of personal jurisdiction over these two

---

**2.** "Specific jurisdiction" occurs when a state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). Here all of Hanes's claims against Joanne Ronson and Norma Koppel relate to the contract they signed and the underlying series of transactions.

individuals.[3]

Turning to the other considerations discussed in *Burger King*, it appears that North Carolina has a notable interest in this litigation because Hanes is a resident corporation and the contract is governed by North Carolina law. Although South Carolina and New York may also have an interest in this suit, the latter's does not measure up to North Carolina's and the former would be equally inconvenient for these New York residents. Regarding the Defendants' inconvenience, the court notes that all of the Defendants have retained the same counsel and in any event the inconvenience here is no greater than that in *Burger King*. Lastly, the court believes that judicial efficiency will be served by resolving all of these disputes in a single forum which is now intimately familiar with the background transactions. Accordingly, the court finds that *Burger King*'s secondary factors support its assertion of jurisdiction. *Burger King*, 471 U.S. at 487, 105 S.Ct. at 2190.

The Defendants' anti-jurisdictional arguments are based primarily on the uncontested fact that they have never been physically present in North Carolina or have been here only once, on a mere "fortuity."[4] Largely ignoring the holding and reasoning of *Burger King*, they instead rely on distinguishable and less-recent precedents from the North Carolina Supreme Court and from federal district courts within this state. Typical among these is *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E.2d 610 (1979), in which the state supreme court held that a New Yorker's gratuitous signature of a conditional promissory note payable to a North Carolina plaintiff did not constitute minimum contacts. *United Buying* stressed that the defendant received no commercial benefits which were enforceable in this state, a

claim which the current individuals cannot make. *United Buying*, 296 N.C. at 517, 251 S.E.2d 610. These Defendants' nonpresence or lack of physical activity within this state does not control the due process analysis and cannot override the substantial connections created by their contract.

In sum, the court must make a reasoned judgment regarding the existence of minimum contacts and fundamental fairness. In some respects, such as these Defendants' lack of personal involvement with the negotiations and the contract's somewhat limited future consequences, the basis for exercising personal jurisdiction is less compelling than that in *Burger King;* perhaps this case abuts the reasonable limits of the *Burger King* rationale. Nonetheless, after a careful evaluation of the Export agreement, the surrounding circumstances, and controlling law, the court believes that Joanne Ronson and Norma Koppel have sufficient contacts with this forum to uphold the exercise of personal jurisdiction.

### B. *Savoy Trading Co., Inc.*

Since the requirements of due process must be met as to each individual defendant, the court must independently evaluate the considerably murkier facts concerning personal jurisdiction over Savoy. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); *Rush v. Savchuck*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). The most significant difference between Savoy and the two individuals is that Savoy is not a party to any of the disputed contracts. Hanes has thus been forced to rely on a somewhat tenuous theory of conspiracy jurisdiction. Hanes also argues that the limited evidence of Savoy's contacts with this state suffices to subject Savoy to both

---

**3.** Aside from the contract, the court notes that Joanne Ronson was present in Charlotte for the closing and was employed by Hanes for at least "a short period of time" after the transaction was closed. Affidavit of Joanne Ronson, p. 3. These additional contacts go beyond those present in *Burger King*, reinforcing her deliberate affiliation with this forum and the reasonable foreseeability of litigation here.

**4.** For a truly fortuitous or attenuated presence within a state, *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (New York auto distributor's product involved in an accident in Oklahoma while its New York owner was moving to Arizona).

specific and general jurisdiction. Savoy, in turn, has pointed to its lack of contacts to North Carolina and has contended that Hanes has failed to carry its burden of proving that jurisdiction exists.

Under the conspiracy theory of jurisdiction, a conspirator who has few contacts with a state may nonetheless be subject to the state's jurisdiction if substantial acts in furtherance of the conspiracy were performed in the state and the conspirator knew or should have known that these acts would be performed. *Gemini Enterprises*, 470 F.Supp. at 564; *see generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069, p. 408–11 (1987). Since the acts of co-conspirators are attributable to other members of the conspiracy, if there was a conspiracy Savoy may be bound by the acts of Harold and Joanne Ronson.

Hanes must carry the burden of alleging and proving the requisite jurisdictional facts. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). In the conspiracy context, this involves " 'a factual showing of a conspiracy and also of a connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent.' " *McLaughlin v. Copeland*, 435 F.Supp. 513, 530–31 (D.Md.1977) (quoting *Leasco Data Processing Equipment Corp. v. Maxwell*, 319 F.Supp. 1256, 1261 [S.D.N.Y.1970] ). However, since the decision as to jurisdiction also embraces questions of ultimate liability, Hanes need only present facts sufficient to show "threshold" or *prima facie* jurisdiction. *Gemini Enterprises*, 470 F.Supp. at 565, n. 4. As explained in *Gemini*, this standard is "akin to the one for summary judgment;" the court should grant the motion to dismiss only if there is no dispute as to the material jurisdictional facts. *Id.*

The court concludes that Hanes has met this minimal burden. Although Joanne Ronson and Norma Koppel submitted affidavits generally denying the existence of a conspiracy, most of the facts which would add up to a *prima facie* case are admitted or, at this point, unrefuted in their specif-

ics. Joanne Ronson, Savoy's sole stockholder, is Harold Ronson's daughter. Savoy was apparently formed in June 1986, two months before the Hanes–Lowenthal series of transactions. Joanne worked for Hanes for a short time, and her father left Hanes a few months later under somewhat cloudy circumstances. Savoy utilizes at least some of the same agents as Lowenthal did before it was sold, and there is little question that Savoy competes directly with the new Hanes Lowenthal division. While Savoy and Joanne Ronson are not bound by Harold Ronson's non-competition agreement and may be entirely innocent, the court cannot say that the above evidence is susceptible to only one interpretation.

The court's inclination to deny the motion to dismiss as to Savoy is buttressed by the incomplete state of the evidence regarding Hanes's second jurisdictional theory (straight minimum contacts). Coincident with its burden of proving that jurisdiction exists, the Plaintiff is entitled to discovery "to obtain the facts necessary to carry that burden." *X–Rail Systems, Inc. v. Norfolk & Western Railway Co.*, 485 F.Supp. 553, 555 (D.N.J.1980). The discovery materials before the court indicate that Savoy is a New York corporation with its principal place of business in New York City. Joanne Ronson's affidavit further states that Savoy maintains no place of business in North Carolina, that no agents or representatives solicit or have solicited customers or suppliers here, and that none of Savoy's products have been used or consumed within this state. On the other hand, Savoy's answers to interrogatories, vague though they are, indicate that Savoy has (1) purchased and/or sold goods produced in North Carolina, (2) sold goods to persons located in North Carolina, (3) ordered or shipped goods into or out of the state, and (4) contracted with persons with offices in North Carolina.

The court is left with a partial view of the nature and extent of Savoy's contacts with this state. More extensive and detailed discovery should bring some clarity to this otherwise opaque picture. Savoy's motion to dismiss will be denied.

## II. The Motions to Abate and to Consolidate

■ Hanes filed a motion to consolidate simultaneously with the filing of its second complaint. Although this complaint named new parties and considerably broadened the causes of action, Hanes invoked Fed.R. Civ.P. 42(a) because the cases arise out of the same series of transactions and present common questions of fact and law. The Defendants have moved to dismiss the second action on the ground of abatement, essentially arguing that the two suits are so closely related that state law requires the court to abate the latter. Believing that Hanes should assert its additional claims as counterclaims in its reply or through the use of an amended complaint, the Defendants contend that the second action was brought to obfuscate or improperly influence the pending motion to transfer.

After a thorough review of the two complaints and the law cited in the briefs, the court believes that consolidation is the proper means of achieving convenience and economy for all parties. *Jaehning v. Schoner,* 96 F.R.D. 58 (M.D.N.C.1982). Although the court agrees that an amended complaint would have been the best method of pleading Hanes's additional claims, the end result of an amended complaint—new parties and wider allegations—would have been approximately the same as will be achieved by consolidation. Even if the court were disposed to abate the second suit, the court suspects that Hanes would move to amend its complaint or its reply, making the abatement an exercise in form over substance.[5]

The two pending suits obviously involve common questions of fact and law, and "actions involving the same parties are apt candidates for consolidation." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2384, p. 263 (1971); *see also Miller v. United States Postal Service,* 729 F.2d 1033, 1036 (5th Cir.1984) (consolidating two cases involving the same parties and issues

which were pending in the same court). The simultaneity of the motion to consolidate and the second suit substantially negates any inference of improper motive. Since consolidation will enhance efficiency and economy for all concerned, Hanes's motion to consolidate will be granted.

## III. The Motion to Transfer

■ Under 28 U.S.C. § 1404(a), the court may transfer a case "for the convenience of parties and witnesses, in the interest of justice." In their motion to transfer Ronson and Ronco seek to characterize this suit as a local action involving leased premises in South Carolina. They reinforce this argument with references to the convenience of witnesses (mainly old Lowenthal employees who now work for Hanes) and to South Carolina's interest in resolving this controversy.

The court cannot accept the Defendants' premise or their application of Section 1404(a). Even without the consolidated case, this controversy was grounded primarily in reciprocal allegations of misrepresentation and breach of contract. When the consolidated cases are considered together (approximately as they would have been if Hanes had amended its original complaint), the court is faced with a multifaceted commercial dispute which transcends local leasehold concerns.

The convenience of the parties, the convenience of the witnesses, and the interests of justice favor retaining this case in North Carolina. On the Plaintiff's side, Hanes obviously prefers to keep the case here; on the Defendants' side, the court perceives no greater inconvenience to Florida and New York residents in trying the case in North Carolina as opposed to South Carolina. The two key witnesses appear to be Donald Bernstein and Harold Ronson, the principal negotiators of the sale of Ronson's business. Bernstein has submitted an affidavit indicating that the Middle District is the most convenient location for him, whereas Ronson's affidavit does not

---

**5.** It should be noted, however, that consolidation does not merge the suits into a single action; each case retains its separate character and requires a separate judgment. *Johnson v. Manhattan Railway Co.,* 289 U.S. 479, 496, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933).

pretend that South Carolina is any more convenient for him, a Florida resident. Finally, it appears that in large measure the contracts were negotiated and executed in North Carolina and will be governed by North Carolina law.

A plaintiff's choice of forum should not be disturbed absent compelling factors. *Ellicott Machine Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974). The Defendants here have fallen short of the showing required to transfer under 28 U.S.C. § 1404(a); indeed, the factors listed in that section favor retaining rather than transferring jurisdiction. Accordingly, the motion to transfer will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER

In accordance with the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that the motion to dismiss Defendants Joanne Ronson, Norma Koppel, and Savoy Trading Co., Inc., for lack of personal jurisdiction is DENIED; the Defendants' motion to dismiss civil action number C–87–482–WS on abatement grounds is DENIED; the Defendants' motion to transfer civil action number C–87–298–WS is DENIED; and the Plaintiff's motion to consolidate is GRANTED. Pursuant to Fed.R.Civ.P. 42(a), civil actions numbers C–87–298–WS and C–87–482–WS are CONSOLIDATED.