**CAPSTAR CORPORATION, Plaintiff,**

v.

**PRISTINE INDUSTRIES, INC., Defendant.**

**No. ST–C–90–83–P.**

United States District Court, W.D. North Carolina, Statesville Division.

June 26, 1991.

John D. Greene, Statesville, N.C., for plaintiff.

Steven G. Tate, Statesville, N.C., for defendant.

## ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Defendant's motions, filed May 3, 1991, for relief from judgment, to dismiss the complaint, to quash the return of service of the summons, and to stay proceedings to enforce a judgment and to issue a show cause order thereto. On May 29, 1991, Defendant filed a brief in support of the motions. Plaintiff, on June 17, 1991, filed a brief in opposition to each of Defendant's motions.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

This case involves the alleged breach by Defendant of a contract between itself and Plaintiff wherein Plaintiff supplied textile garments to Defendant. Plaintiff, a North Carolina corporation, states in its complaint of August 31, 1990 that Defendant, a New York corporation, failed to pay invoices in the amount of $61,056.28. After Defendant failed to pay the invoices, Plaintiff stopped shipment of a batch of garments produced for Defendant. The contract price for those goods was approximately $74,000.00. Therefore, Plaintiff sought in its complaint damages from Defendant in the amount of $125,709.75.

Plaintiff attempted to effectuate service on Defendant by sending the complaint and summons by registered mail to Defendant's President at its business address as provided in Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. Thereafter, Plaintiff received a certified mail receipt form showing that the complaint and summons had been received by Defendant on September 4, 1990. Contained therein is the illegible signature in the agent box of the form.

Defendant failed to file an answer to the complaint. Accordingly, Plaintiff filed with the Clerk a motion for entry of default and default judgment. On November 16, 1990, default judgment was entered by the Clerk against Defendant in the amount of $125,709.25.

On December 26, 1990, Plaintiff caused the judgment to be registered in the United States District Court for the Southern District of New York in order to commence execution proceedings. Defendant claims that it first became aware of the existence of this lawsuit only after Plaintiff attempted to execute on the judgment. The Honorable Morris Lasker entered a stay of the enforcement of the judgment pending the disposition of the motions currently before this Court.

## II. DISCUSSION OF MOTIONS CURRENTLY BEFORE THE COURT.

The Court has carefully considered the record in this case including the affidavits and exhibits filed by the parties in support of their respective positions. A discussion of each of the four (4) motions follows.

### A. *Defendant's Motion to Quash the Return of Service of the Summons.*

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides that service of a summons and complaint upon a corporation is accomplished by delivering a copy of the same to an officer of the corporation. Delivery of the summons and complaint can be effectuated:

> by mailing a copy of the summons and of the complaint (by first-class mail, postage pre-paid) to the person to be served. . . .

*See* Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure.

Defendant claims that the signature contained in the agent box of the certified mail receipt form bears no resemblance to the signature of any of its agents. Therefore, Defendant argues that it was not properly served, and that the entry of default should be vacated for lack of personal jurisdiction.

Generally, mail service under Rule 4(c)(2) is deemed completed upon receipt of the signed form of acknowledgment of service. *See Armco, Inc. v. Penrod–Stauffer Building Systems,* 733 F.2d 1087, 1089 (4th Cir.1984). Under North Carolina law, a person authorized to receive mail is also an authorized agent for

purposes of receiving service of process. *See Anderson Trucking Service, Inc. v. Key Way Transport, Inc.,* 94 N.C.App. 36, 44, 379 S.E.2d 665, 670 (1989). Moreover, a corporate defendant that fails to receive *actual* notice of a claim against it suffers no due process violation so long as the notice given was of a nature reasonably calculated to provide actual notice and an opportunity to defend. *Id.* The mailing of the summons and complaint in care of an officer of a corporate defendant is a reasonable attempt calculated to provide that defendant with actual notice. *Id.*

In this case, Plaintiff mailed the summons and complaint to the President of Defendant at an address Defendant admits in its affidavits is its business address. Therefore, Plaintiff complied with the dictates of Rule 4(c)(2), and service was effective. Moreover, the return of the certified mail receipt form indicates that some person at Defendant's business received the summons and complaint. However, even if the summons and complaint were not actually received, such a fact is irrelevant in light of the court's decision in *Anderson* that actual notice is not required for service to be valid.

Based on the foregoing, the Court believes that service was proper under Rule 4(c)(2). Accordingly, the Court will deny Defendant's motion to quash the return of service of the summons.

### B. *Defendant's Motion for Relief from Judgment.*

Rule 60(b)(6) of the Federal Rules of Civil Procedure provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reason . . . (6) any other reason justifying relief from the judgment.

Defendant argues that the interests of justice require setting aside this judgment. The Court tends to agree. No evidence has been presented showing that Defendant attempted to avoid service of process. Rather, it appears that the failure of Defendant to learn of the pendency of this lawsuit

resulted from oversight on the part of Defendant's clerical personnel. Moreover, Defendant has exerted a great deal of energy and resources in responding to Plaintiff's complaint upon learning of its existence.

In general, the Court believes that cases should be decided on their merits rather than on technical violations of the Rules of Civil Procedure. Here, no evidence was presented indicating that Defendant exercised bad faith. Accordingly, the Court will grant Defendant's motion for relief from judgment. The Court will direct the Clerk to file Defendant's proposed answer and counterclaim attached as Exhibit D to the motion currently before the Court.

C. *Defendant's Motion to Stay Proceedings to Enforce a Judgment and to Issue A Show Cause Order Thereto.*

Because the Court will grant Defendant's motion for relief from judgment, no judgment currently exists making Defendant's motion to stay moot.

D. *Defendant's Motion to Dismiss.*

Defendant claims that the contract which is the focus of this action is the only significant contact that it has had with North Carolina, the forum state. Although Defendant's President visited Plaintiff's North Carolina plant on one occasion, Defendant contends that the visit was not in connection with the contract at issue in this matter. In affidavits, Defendant admits that numerous phone calls and fax transmissions were made to Plaintiff in North Carolina regarding the contract. However, Defendant urges the Court to disregard these contacts for the purpose of finding in personam jurisdiction exists in this district.

Rule 12(b)(2) of the Federal Rules of Civil Procedure is applicable to motions to dismiss for lack of jurisdiction over a person. The burden of establishing personal jurisdiction rests with the party asserting it. *See* 2A *Moore's Federal Practice*, Par. 12.07[2.–2] at 12–55 (1990) (hereinafter "Moore's"). However, if the court decides a motion to dismiss for lack of jurisdiction over a person without an evidentiary hearing based only on the written submissions of the parties, the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists. *Id.* at 12–56; *see Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir.1986); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985); *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir. 1982). Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing. *See Dowless,* 800 F.2d at 1307.

The allegations of the complaint, unless controverted by opposing affidavits, must be taken as true. *See Thompson,* 755 F.2d at 1165. There is no requirement that the pleadings be verified and no lack of credibility will be implied by the absence of a verification of plaintiff's complaint. *See Dowless,* 800 F.2d at 1307 (citing *Bush v. BASF Wyandotte Corp.,* 64 N.C.App. 41, 45, 306 S.E.2d 562, 565 (1983)). The court may accept affidavits, interrogatories, depositions or any other legitimate method of discovery. *See Thompson,* 755 F.2d at 1165. All conflicts in fact must be resolved in favor of the plaintiff for purposes of determining whether a prima facie showing of personal jurisdiction has been made. *Id.; see also Combs,* 886 F.2d at 676; *Moore's* at 12–56.

The question of jurisdiction over a person must be answered by a two step analysis. *See Dowless,* 800 F.2d at 1306.

First, the court must determine whether the North Carolina long-arm statute confers personal jurisdiction in the court. *Id.; cf. Thompson,* 755 F.2d at 1165–66 ("[I]t is well settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits" ... (quoting) *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir. 1983)). The Fourth Circuit has held that the statutory provisions be given a liberal construction in order to ensure that North Carolina courts maintain the full jurisdictional powers permissible under federal

due process. *See Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062 (4th Cir.1982).

Second, the court must determine whether the exercise of that statutory power will violate the due process clause of the United States Constitution. *Dowless*, 800 F.2d at 1306 (citing *Vishay Intertechnology*, 696 F.2d at 1064; *see also Combs*, 886 F.2d at 675; *Moore's* at 12–60. The United States Supreme Court has held that the due process clause of the federal constitution requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, a defendant should not be surprised by the institution of a lawsuit in a foreign forum where the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

 This Court has consistently held that it should consider the following factors when determining whether minimum contact with the forum state exists: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of the law of the forum

state. *Richmar Development v. Midland Doherty Services*, 717 F.Supp. 1107, 1118 (W.D.N.C.1989); *Federal Deposit Insurance Corp. v. Kerr*, 637 F.Supp. 828, 839 (W.D.N.C.1986); *Monroe Hardware Co. v. Robinson*, 621 F.Supp. 1166, 1168 (W.D.N.C.1985); *Hardin v. DLF Computer Co., Inc.*, 617 F.Supp. 70, 71 (W.D.N.C.1985).[1] The factors must be analyzed on a "case-by-case basis, determining what is fair, reasonable, and just according to the circumstances". *Richmar Development*, 717 F.Supp. at 1118 (quoting *Vishay Intertechnology, Inc.*, 696 F.2d at 1068). A single transaction in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability asserted in the suit. *Id.; see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985).

 In this case, the Court believes that the North Carolina long-arm statute confers this Court with jurisdiction of this matter. Sections 1–75.4(5)(a) and (d) of North Carolina General Statute provide:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(5) Local Services, Goods or Contracts.—In any action which:

a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit,

---

1. Several North Carolina courts have deemphasized the determination of whether minimum contacts exist. The North Carolina long-arm statute extends to the outer bounds of due process, making analysis under the statute and the due process clause is one and the same. *See FDIC v. British–American Corp.*, 726 F.Supp. 622, 629 (E.D.N.C.1989); *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C.1988) (holding that long-arm statute "[m]akes available to North Carolina courts the full jurisdictional powers permissible under federal due process ... [W]hen a plaintiff relies on (the statute), the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process."); *cf. Western Steer–Mom 'N' Pop's,*

*Inc. v. FMT Investments, Inc.*, 578 F.Supp. 260, 264 (W.D.N.C.1984). Thus, given the liberal construction of the North Carolina long-arm statute, the prevailing law in North Carolina presumes the existence of in personam jurisdiction. *Southern Case, Inc. v. Management Recruiters International, Inc.*, 544 F.Supp. 403, 405 (E.D.N.C.1982).

It is unclear to the Court whether these cases completely eliminate the need to determine whether minimum contacts with the forum state exists. It does appear to the Court that the Eastern District of North Carolina is correct in concluding that analysis under the long-arm statute and the due process clause is one and the same if the statute extends to the outer bound of due process.

by the defendant to perform services within this State or to pay for services to be performed in this State by the Plaintiff ...

d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction.

For purposes of both the long-arm statute and due process considerations, numerous North Carolina courts have held that a single contract executed in North Carolina or to be performed in North Carolina may be a sufficient minimal contact upon which to base in personam jurisdiction. *See First–Citizens Bank & Trust Co. v. McDaniel,* 18 N.C.App. 644, 197 S.E.2d 556 (1973), *overruled on other grounds sub nom., United Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E.2d 610 (1979); *Byrum v. Register's Truck & Equip. Co.,* 32 N.C.App. 135, 231 S.E.2d 39 (1977); *cf. Staley v. Homeland, Inc.,* 368 F.Supp. 1344 (E.D.N.C.1974). Where an out-of-state defendant entered into a contract with a North Carolina plaintiff to ship defendant's product to the plaintiff, such acts manifested a willingness for the defendant to conduct business within North Carolina. *See Collector Cars of Nags Head, Inc. v. G.C.S. Electronics.,* 82 N.C.App. 579, 347 S.E.2d 74 (1986). Conversely, the North Carolina Supreme Court held that an offer by a nonresident defendant to purchase shirts from a North Carolina manufacturer was sufficient minimal contacts with the state to satisfy the long-arm statute. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 318 N.C. 361, 348 S.E.2d 782 (1986); *see also ETR Corp. v. Wilson Welding Serv., Inc.,* 96 N.C.App. 666, 386 S.E.2d 766 (1990). Furthermore, the transfer of large amounts of cash into or out of North Carolina to a nonresident has been deemed a shipment of "things of value" pursuant to § 1–75.4(5)(d), and thus a sufficient minimal contact for purposes of the long-arm statute. *See Church v. Carter,* 94 N.C.App. 286, 380 S.E.2d 167 (1989).

As previously noted, Defendant entered into a contract with a North Carolina corporation which caused a substantial amount of goods to be shipped from this state. The Court believes that this contract, standing alone, would be a sufficient minimal contact in order to satisfy both the long-arm statute and due process considerations. But furthermore, Defendant by its own admission made numerous phone calls and fax transmissions into North Carolina in relation to the contract. Finally, Defendant's President visited the state in order to ascertain whether Plaintiff's plant was capable of producing the garments.

Based on these repeated contacts over a lengthy period of time, the Court believes that sufficient minimal contacts have occurred with the forum state in order to satisfy both the long-arm statute and due process considerations. Therefore, the Court will deny Defendant's motion to dismiss.

### III. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that:

(1) Defendant's motion for relief from judgment be, and hereby is, GRANTED. The Clerk is directed to file Defendant's proposed answer and counterclaim attached as Exhibit D to the motion currently before the Court;

(2) Defendant's motion to dismiss the complaint be, and hereby is, DENIED;

(3) Defendant's motion to quash the return of service of the summons be, and hereby is, DENIED; and

(4) Defendant's motion to stay proceedings to enforce a judgment and to issue a show cause order thereto is MOOT.