**EASTERN MARKETING CORPORATION,**
**Plaintiff,**

v.

**TEXAS MERIDIAN PRODUCTION COMPANY, LTD. and TMR Acquisition, Ltd., Defendants.**

**Civ. A. No. 2:92–0672.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 9, 1992.

Richard D. Owen, Goodwin & Goodwin, Charles W. Goodwin, Charleston, W.Va., for plaintiff.

David B. Thomas, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the Defendants' motions to dismiss for lack of personal jurisdiction and improper venue, pursuant to *Rule* 12(b)(2) and (b)(3) of the Federal Rules of Civil Procedure or, alternatively, to transfer venue to the United States District Court for the Southern District of Texas, Houston Division. Response and reply briefs have been submitted and now this matter is ripe for the Court's attention.

Initially the Court notes that all conflicts of fact must be resolved in favor of the Plaintiff for purposes of determining whether a prima facie showing of personal jurisdiction has been made. *Capstar Corp. v. Pristine Industries, Inc.*, 768 F.Supp. 518, 522 (W.D.N.C.1991) (citations omitted). Under the traditional analysis concerning questions of *in personam* jurisdiction, the Court must first determine whether the West Virginia long arm statute confers

personal jurisdiction and second, whether the exercise of that statutory power will violate the due process clause of the United States Constitution. After careful consideration, the Court concludes that the West Virginia long arm statute does confer personal jurisdiction in this Court and that the exercise of personal jurisdiction in the case at bar does not violate the due process clause of the United States Constitution.

■ The Defendants in this case were not authorized to transact business in West Virginia. West Virginia's long arm statute specifically addresses this situation:

> "... a foreign corporation not authorized to conduct affairs or do or transact business in this state pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transaction business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this state ..."

*W.Va.Code,* § 31–1–15 (1988). In the present case at least a portion of the parties' contract was performed in West Virginia, since the Defendants were contractually obligated to deliver natural gas to the Plaintiff's West Virginia location. Therefore, West Virginia's long arm statute should apply and personal jurisdiction attaches.

■ Whether the exercise of this statutory power violates the due process clause of the United States Constitution involves consideration of the following minimum contact factors with the forum state: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state in convenience, and (5) whether the defendant invoked benefits and protection of the law of the forum state. *Capstar Corp. v. Pristine Industries, Inc.,* 768 F.Supp. at 523 (W.D.N.C.1991) (citations omitted). These factors must be analyzed on a case-by-case basis, determining what is fair, reasonable and just according to the circumstances, and in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability

asserted in the suit. *Id.;* see also *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985).

■ In this case the out of state Defendants entered into a gas purchase contract with a West Virginia Plaintiff. The contract provided for the purchase of natural gas by the Plaintiffs from the Defendants. Such acts manifest a willingness to conduct business within West Virginia. *Capstar Corp., supra,* at 524. Furthermore, while choice of law considerations are not conclusive as to jurisdiction, see *Shaffer v. Heitner,* 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977), they should nevertheless carry some weight. *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 528 (4th Cir.1987). Certainly an assertion of jurisdiction such as this one should not come as any surprise. By entering a gas purchase contract with the Plaintiff and agreeing to a West Virginia choice of law provision, the Defendants purposely availed themselves of both the benefits and detriments of West Virginia law.

■ Likewise, in early 1990 representatives of the Defendants came to Eastern's headquarters in Charleston, West Virginia, for the purpose of discussing business from Eastern. Following this meeting the parties exchanged letters and telephone calls, ultimately concluding in the gas purchase contract. Contrary to Defendants' argument, it is not necessary that the Defendants ever actually enter the forum state's territory. So long as the Defendants purposefully directed their activities toward the forum states and the litigation arises from those activities, then due process is satisfied. *Pittsburgh Terminal Corp., supra,* at 525 (citations omitted); see also *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), (defendants had demonstrably fewer ties with the forum state than the Defendants in the case at bar, yet jurisdiction was held proper).

Furthermore, by their own admissions, Defendants made numerous phone calls and sent fax transmissions into West Virginia relating to the subject gas purchase

contract. Accord: *Capstar, supra,* at 768 F.Supp. at 524. (Where a foreign corporation entered into a contract with a North Carolina supplier, causing a substantial amount of goods to be shipped from North Carolina, it had sufficient minimum contacts with that state to satisfy both the long arm statute and federal due process considerations, particularly when corporation had made numerous phone calls and fax transmissions into North Carolina in relation to the contract and had visited the North Carolina plant).

The Defendants argue that a single Charleston visit by Mark Acree, an employee of Texas Meridian Operating Company, Inc., was casual and does not establish sufficient minimum contacts. This argument is without merit. Following Acree's early 1990 visit to Eastern's Charleston headquarters, the parties exchanged letters and telephone calls, ultimately culminating in the gas purchase contract which is the subject of this litigation. To this contention, the Court relies on *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 474, 105 S.Ct. at 2183, since the Defendants in that case had fewer ties with the forum state than do the Defendants here, yet jurisdiction was held proper.

Consequently, the Court concludes the Defendants have "purposefully" availed themselves of the privilege of doing business in West Virginia by creating continuing obligations between themselves and a resident West Virginia plaintiff. The Defendants' contractual obligations with Eastern, including the West Virginia choice of law provision, personal visit by Defendants' employee, and telephone and fax correspondence are fair warning that the Defendants may be subject to jurisdiction in West Virginia. The "fair warning" requirement is satisfied where the defendant has purposely directed its activities at residents of the forum state and the litigation arises out of or relates to those activities. *Burger King v. Rudzewicz,* 471 U.S. at 472, 105 S.Ct. at 2181–82. Accordingly, the Court concludes that the exercise of personal jurisdiction pursuant to the West Virginia long arm statute does not offend the due process clause of the United States Constitution.

The personal jurisdiction inquiry does not end with the conclusion that the Defendants in the case at bar have the necessary contacts with West Virginia to satisfy due process. The Court must continue and decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice" and in appropriate cases evaluate "the burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several states in furthering fundamental substantive social policies." *Burger King,* 462 U.S. at 476–77, 105 S.Ct. at 2184 (citations omitted).

The Defendants argue that even in the presence of the requisite minimum contacts with West Virginia, these other factors make the assertion of personal jurisdiction unreasonable. While the Defendants will incur some burden from litigating in West Virginia, this burden must be balanced against the Defendants' purposeful availment of the benefits and detriments of contractual obligations under West Virginia law. West Virginia also has a strong interest in providing a forum for a claim such as this one, where an alleged contract breach has detrimentally impacted a West Virginia corporation. The Court concludes that the Defendants have failed to present the compelling case necessary to defeat an otherwise proper exercise of personal jurisdiction. In so holding, the Court has weighed consideration such as fundamental fairness and the Defendants' expectation of suit in West Virginia. Accordingly, the Defendants' motion to dismiss for lack of personal jurisdiction is denied.

Having concluded that personal jurisdiction is proper, diversity venue lies, *inter alia,* where the Defendant is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(a). Accordingly, venue is proper in the Southern District of West Virginia.

Finally, as to Defendants' motion to transfer venue, the Court concludes that a Plaintiff's choice of forum should not be disturbed absent compelling factors, and that the Defendants failed to meet the burden of establishing that a transfer is appropriate in this case. Accordingly, the Court denies the Defendants' motion to transfer venue.