**M & G POLYMERS USA, LLC a Delaware limited liability company fka Shell Polyesters LLC, Plaintiff,**

v.

**CNC CONTAINERS CORPORATION, a Washington corporation, Defendant.**

No. CIV.A. 3:01–0992.

United States District Court, S.D. West Virginia. Huntington Division.

March 14, 2002.

Susan M. Cook, Hogan & Hartson, L.L.P., Washington, DC, Kara L. Cunningham, Steptoe & Johnson, PLLC, Charleston, WV, Steven P. Hollman, Hogan & Hartson L.L.P., Washington, DC, for plaintiff.

Brial A. Glasser, Bailey & Glasser, Charleston, WV, for defendant.

## ORDER

CHAMBERS, District Judge.

Currently pending before the Court is a motion to dismiss by Defendant CNC Containers Corporation. In its motion, Defendant argues this Court lacks personal jurisdiction over it, venue is improper, and there was insufficient service of process. Plaintiff M & G Polymers USA, LLC (M & G), opposes said motion. Upon review, the Court agrees with Defendant that this Court does not have personal jurisdiction over it and, therefore, **GRANTS**, Defendant's motion to dismiss.

### I.

### FACTUAL BACKGROUND

Plaintiff states it is a limited liability company incorporated in Delaware with its headquarters and principal place of business located in Apple Grove, West Virginia.[1] *Complaint*, ¶ 2. Defendant asserts it is a corporation organized and incorporated under the laws of the State of Washington with its principal place of business located in Tumwater, Washington. According to the parties, on or about December 13, 1999, Plaintiff's predecessor, Shell

---

1. There is some dispute between the parties as to the location of Plaintiff's headquarters and its principal place of business. Defendant claims that Plaintiff's website identifies its headquarters as being located in Houston, Texas, and West Virginia's Secretary of State believes Plaintiff's principal office is in Houston. As will be explained in the text of this opinion, however, the Court must take all evidence in the light most favorable to Plaintiff in ruling on Defendant's motion to dismiss. Thus, for purposes of this decision, the Court will assume Plaintiff's corporate headquarters and principal place of business are in West Virginia.

Polyesters LLC ("Shell"), and Defendant entered into a contract for the sale of polyethylene terephthalate ("PET") resin by Shell to Defendant.[2] In its Complaint, Plaintiff alleges Defendant was obligated under the contract to purchase at least 50,000,000 pounds of PET resin annually. *Complaint,* ¶ 1. By its terms, the time period for performance under the contract began on January 1, 2000, and was set to end on December 31, 2002. *Sales Contract,* ¶ 3. Plaintiff alleges that between January and October 2000, Defendant purchased a total of 27,378,000 pounds of PET resin, but Defendant then informed Plaintiff it intended to suspend further purchases. *Complaint,* ¶ 13 & 15. As a result, Plaintiff filed this action for breach of contract.

In examining the formation and terms of the contract for jurisdictional purposes, Plaintiff does not dispute Defendant's claim that the negotiation and execution of the contract took place entirely in the States of Texas and Washington. In addition, the contract itself identifies Shell's address as Houston, Texas, and Defendant's address as Tumwater, Washington. The contract also contains a Texas choice of law provision.[3] The contract does not specify where manufacturing or shipping of the PET resin will occur. Instead, it provides that the "Seller will select the origin of shipments and the carrier." *Sales Contract,* ¶ 6. The contract further provides that the FOB point is at "Seller's shipping location, freight prepaid[.]" *Id.,* ¶ 2. Defendant states it sent its payments for the resin it received to Plaintiff's office in Atlanta, Georgia. The contract also requires any notices be sent to the parties' addresses in Texas and Washington, respectively. *Id.,* ¶ 12. There is absolutely no mention of West Virginia in the contract. Nevertheless, Plaintiff asserts that the parties knew the PET resin would be shipped from West Virginia because, at the time of the contract, Shell's only domestic plant making PET resin was located in West Virginia. In addition, Plaintiff asserts Defendant had sent its purchase orders to its plant in Apple Grove, West Virginia. For these reasons, Plaintiff argues Defendant is subject to personal jurisdiction in this State.

On the other hand, Defendant contends that it has never been incorporated in West Virginia, it is not registered to do business in the State, and it does not own or control any companies organized in, or doing business in, West Virginia. In addition, Defendant claims it does not own, lease, or rent any real property in West Virginia. Likewise, Defendant states that it does not maintain any offices, bank accounts, or telephone listings in West Virginia, and it has never solicited any business nor does it have any customers in West Virginia. Moreover, Defendant contends that none of its employees have ever visited West Virginia on behalf of the company. Upon review of the record, the Court agrees with Defendant that it is not subject to the personal jurisdiction of this Court.

## II.

## DISCUSSION

When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise personal

**2.** Shell became M & G Container Company in approximately June of 2000.

**3.** The choice of law provision provides in all capital letters: "**GOVERNING LAW.** THIS CONTRACT WILL BE INTERPRETED AND THE RIGHTS, OBLIGATIONS AND LIABILITIES OF THE PARTIES DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS." *Sales Contract,* ¶ 13.

jurisdiction over it, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989) (citation omitted). When, as in this case, the court rules on the motion based solely on the Complaint and affidavits and does not hold an evidentiary hearing or wait until evidence relevant to the jurisdictional issue is presented at trial, "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.* 124 F.3d 619, 628 (4th Cir.1997) (quoting *Combs,* 886 F.2d at 676). Under these circumstances, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 676.

In order for Plaintiff to prove the Court may assert personal jurisdiction over Defendant in this case, Plaintiff must demonstrate (1) that a statute or rule authorizes service of process on Defendant in West Virginia; and (2) that service on Defendant comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Celotex,* 124 F.3d at 627 (citation omitted). As West Virginia's long-arm statute extends to the full reach of due process, "it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Id.* at 627–28. (citations omitted). Instead, "the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* at 628. Thus, this *Court's* inquiry focuses on whether exercising personal jurisdiction over Defendant is consistent with due process. *See id.*

Personal jurisdiction is consistent with the Due Process Clause if the Court determines Defendant has sufficient "minimum contacts" with West Virginia that requiring it to defend its interest in West Virginia "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The United States Supreme Court has explained that "minimum contacts" must be "purposeful." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, a defendant cannot be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or . . . [because] of the 'unilateral activity of another party or a third person.'" *Id.* at 475, 105 S.Ct. 2174 (citations omitted). Rather, a defendant must act in some way in which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotations, citations, and footnote omitted). This requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Celotex,* 124 F.3d at 628 (internal quotations and citations omitted). With these concepts in mind, the Court turns to the relevant pleadings and affidavits submitted in this case.

■ Construing all the relevant pleading and affidavits in the light most favorable to Plaintiff, the only connection this case has with West Virginia is that Defendant sent purchase orders to West Virginia and that Plaintiff alleges Defendant knew at the time it entered into the contract that the PET resin would be shipped from West Virginia. However, the Court finds these connections are insufficient to establish a prima facie case of jurisdiction in West Virginia. As explained by the

United States Supreme Court in *Burger King Corp.*, a defendant must have "minimum contacts" with the forum state which are "purposeful." A non-resident defendant cannot be brought within the jurisdiction of a State simply because of a unilateral decision made by another party. The Court emphasized that a number of factors must be considered, including the terms of the contract and the parties' negotiations and actual course of dealings. *Id.* at 479, 105 S.Ct. 2174.

Here, the contract clearly states that the seller had discretion to select the origin of the shipment. *Sales Contract,* ¶ 6. Although Defendant may have surmised at the time it entered into the contract that Plaintiff intended to ship from its West Virginia plant, there is no requirement in the contract that Plaintiff ship from West Virginia. In fact, in reading the contract, it is very clear that Defendant had no control whatsoever over the origin of the product's shipment.[4] Instead, such decision was solely and unilaterally made by Plaintiff, and Plaintiff could choose to ship the product from anywhere it wanted. Although Defendant did send its purchase orders to the West Virginia, it did so because Plaintiff elected to ship the PET resin from West Virginia. Considering all the circumstances, the fact purchase orders were sent here is insufficient to establish that Defendant was "purposefully avail[ing] itself of the privilege of conducting activities within ... [West Virginia], thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations and citation omitted). Defendant merely had incidental contact with West Virginia because it had to order and accept shipment of the product from the location selected by Plaintiff.

█ Plaintiff further asserts that other courts have found jurisdiction exists in cases similar to the one at bar. However, the Court has reviewed these cases and finds they are distinguishable from the present case. For instance, in *Allied Metal Co. v. Edgerton Metal Products, Inc.*, 908 F.Supp. 576 (N.D.Ill.1995), the court held jurisdiction was proper in Illinois against an Ohio defendant where the Ohio defendant entered into a contract for the purchase and delivery of goods in Illinois with an Illinois plaintiff. 908 F.Supp. at 580. Similarly, in *General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc.*, 765 F.Supp. 1246 (W.D.N.C. 1991), the court found a contract between a North Carolina company and a South Carolina company for the shipment of a large amount of goods from North Carolina to South Carolina with payments being due to the North Carolina company is sufficient to establish jurisdiction in North Carolina. 765 F.Supp. at 1250.[5] In this case, however, Defendant is not incorporated in West Virginia, no payments were made in West Virginia, the contract was not entered into in West Virginia, and, indeed, the contract does not even mention

---

4. Thus, Defendant also had no control over the FOB point because it is designated in the contract as the "Seller's shipping location, freight prepaid." *Complaint,* ¶ 2. Plaintiff further states "[a]ny customer service concerns or quality issues would have been resolved by ... [it] in West Virginia." Here again, however, Defendant had no control over where Plaintiff resolved these issues. These were decisions made solely by Plaintiff and are insufficient to bring Defendant into the jurisdiction of this Court.

5. *See also Eastern Mktg. Corp. v. Texas Meridian Prod. Co.*, 798 F.Supp. 363, 365–66 (S.D.W.Va.1992) (cited by Plaintiff) (finding jurisdiction over non-resident defendant where representatives of the defendant visited, called, and wrote the plaintiff in West Virginia, the defendant entered into a contract with a West Virginia plaintiff, the contract was to be performed at least partially in West Virginia, and the parties agreed to a contract containing a West Virginia choice of law provision).

West Virginia. In addition, the contract utilizes the parties' offices in Texas and Washington and contains a Texas choice of law provision.[6] Even if the Court accepts Plaintiff's allegation that its headquarters and principal place of business are located in West Virginia, it does not change the fact that Defendant did not visit, negotiate, or enter into this contract with the West Virginia office and, in fact, its only contact with the West Virginia is the purchase orders it sent here because Plaintiff chose West Virginia as its place of shipment.[7]

Given the facts of this case, the Court finds Plaintiff has failed to establish a prima facie case of jurisdiction in West Virginia. Moreover, the Court finds it would "offend 'traditional notions of fair play and substantial justice'" to require Defendant to defend this action in West Virginia under these circumstances. *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154; *see Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 465 (C.A.D.C.1988) (holding "a purchaser who selects an out-of-state seller's goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located or from which it ships merchandise"). Quite

simply, Defendant lacks the minimum contacts with West Virginia in order for this Court to assert personal jurisdiction over it.[8]

## III.

## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** Defendant's motion and **DISMISSES** this case from the docket of the Court. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties, and to publish such Order on the Court's website.

6. "[W]hile choice of law considerations are not conclusive as to jurisdiction, they should nevertheless carry some weight." *Eastern Mktg. Corp.*, 798 F.Supp. at 365 (citations omitted).

7. Thus, this case also is distinguishable from *YKK USA, Inc. v. Baron*, 976 F.Supp. 743 (N.D.Ill.1997), cited by Plaintiff. In *YKK*, the plaintiff was a foreign corporation with its principal place of business in Illinois, and the defendant was a New Jersey corporation. In finding jurisdiction proper in Illinois, the court relied upon the fact that the defendant had contacted the plaintiff in Illinois by telephone and mail over a five year period regarding "orders, payments arrangements,

shipping instructions, and other issues related to the purchase and sale of ... [the plaintiff's] goods by and to ... [the defendant]." 976 F.Supp. at 745. As previously mentioned, in this case, Defendant made no such contact with Plaintiff's West Virginia office other than sending the purchase orders here because West Virginia was designated by Plaintiff as the point of shipment.

8. As the Court determined Defendant is not subject to personal jurisdiction in West Virginia, the Court need not address the venue and service of process issues raised by Defendant. The Court also finds that further discovery on the issues raised by Plaintiff is unnecessary because the parties have very clearly laid out

the relevant facts, supported by affidavits and a copy of the sales contract.