Filed:  September 15, 1997

                  UNITED STATES COURT OF APPEALS

                     FOR THE FOURTH CIRCUIT

                     ─────────────────

                          No. 96-1592
                     (CA-94-56-5, BK-94-01)

                     ─────────────────

Owens-Illinois, Incorporated,

                                   Plaintiff - Appellant,

          versus

Rapid American Corporation, et al,

                                   Defendants - Appellees.

                     ─────────────────

                          O R D E R

                     ─────────────────

     The Court amends its opinion filed September 4, 1997, as
follows:

     On page 2, section 1, line 6 -- "Kenneth R. Friedman, RUBIN,
BAUM, LEVIN, CONSTANT & FRIEDMAN, New York, New York, for Appel-
lee." is added to the attorney information.

                              For the Court - By Direction

                              /s/ Patricia S. Connor
                     ─────────────────────────
                              Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: THE CELOTEX CORPORATION,
<u>Debtor.</u>

OWENS-ILLINOIS, INCORPORATED,
<u>Plaintiff-Appellant,</u>

No. 96-1592

v.

RAPID AMERICAN CORPORATION,
Successor in interest to Philip-Carey
Corporation,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-94-56-5, BK-94-01)

Argued: April 9, 1997

Decided: September 4, 1997

Before HAMILTON and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
with Judge Motz and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** Robert Ogilvie Meriwether, NELSON, MULLINS,
RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for

Appellant. Paul H. Aloe, RUBIN, BAUM, LEVIN, CONSTANT & FRIEDMAN, New York, New York, for Appellee. **ON BRIEF:** R. Bruce Shaw, George B. Cauthen, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina; David B. Hendrickson, HENDRICKSON & LONG, Charleston, West Virginia, for Appellant. Kenneth D. Friedman, RUBIN, BAUM, LEVIN, CONSTANT & FRIEDMAN, New York, New York, for Appellee.

---

## OPINION

HAMILTON, Circuit Judge:

This action for contribution stems from eight civil proceedings in which the appellant, Owens-Illinois, Inc. (Owens), and the Celotex Corporation (Celotex), a successor in interest to the Philip-Carey Manufacturing Corporation (Old Carey) and a new version of the same company (New Carey), were found jointly and severally liable for personal injuries caused by exposure to asbestos-containing products manufactured by Owens, Old Carey and New Carey. Owens satisfied both its allocated share of the judgments and Celotex's allocated share of the judgments. Celotex's allocated share of the judgments totaled $1,794,298.84.

Prior to the entry of some of the judgments, Celotex filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. Owens then sought contribution from another corporate successor of Old Carey, appellee Rapid American Corporation (Rapid).**1** Accordingly, on October 3, 1994, Owens filed a complaint

---

**1** In Tretter v. Rapid Am. Corp., 514 F. Supp. 1344, 1346 (E.D. Mo. 1981), an unrelated action, the court gave the following summary of the dizzying corporate lineage of Rapid and Celotex:

> In 1888, the Philip Carey Manufacturing Corporation (Old Carey) was formed in Ohio. Effective June 1, 1967, Old Carey was merged with Glen Alden. On that same date, Glen Alden assigned all the assets and liabilities it acquired from Old Carey to a newly formed subsidiary, Philip Carey Manufacturing Corporation (New Carey). In this transaction, New Carey agreed to

2

in the Circuit Court of Monongalia County, West Virginia, against Rapid, as the corporate successor to Old Carey, for contribution in the amount of $1,794,298.84, plus prejudgment interest (the Contribution Action). See W. Va. Code § 55-7-13 (1994). Owens asserted that personal jurisdiction existed over Rapid via Old Carey, who had put its products into the stream of commerce with the expectation that they would reach West Virginia.[2]

Pursuant to 28 U.S.C. § 1452(a), Rapid removed the Contribution Action to the United States District Court for the Northern District of West Virginia on the basis that it was "related to" the Celotex bankruptcy case in Florida, 28 U.S.C. § 1334(b).[3] Title 28, United States Code § 1334(b) provides that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis

_____

assume all the liabilities of Old Carey and agreed to indemnify Glen Alden against any such liabilities including the cost of defense or settlement of any such liabilities. After this transaction Glen Alden continued in operation. Glen Alden itself has never manufactured or sold asbestos, and plaintiff does not contend otherwise.

In 1968, Philip Carey Manufacturing Corporation changed its name to Philip Carey Corporation. In 1970, Philip Carey Corporation merged into Briggs Manufacturing Company and the surviving corporation adopted the name Panacon Corporation. In 1972, Celotex Corporation purchased the Panacon Corporation, and assumed all its liabilities.

Glen Alden subsequently merged into Rapid American's corporate structure. See id at 1345 n.1.

[2] Before its merger into Glen Alden, Old Carey was an Ohio corporation with its principal place of business in Cincinnati, Ohio.

[3] Neither of the two traditional bases for subject matter jurisdiction in federal court existed. Federal question jurisdiction did not exist because Owens' claim for contribution was based on the law of West Virginia. See 28 U.S.C. § 1331. Diversity jurisdiction did not exist because both Owens and Rapid are Delaware corporations. See 28 U.S.C. § 1332.

3

added). According to Rapid's Notice of Removal, the action was related to the Celotex bankruptcy case because "[s]hould [Owens] prevail in its contribution action, [Celotex] would immediately become liable to Rapid as its contractual and common law indemnitor." (J.A. 15).

Rapid had in fact previously filed a proof of claim against the Celotex bankruptcy estate for a contingent and unliquidated amount based on theories of contribution and indemnification. According to Rapid's proof of claim:

> Celotex's liability to Rapid is based upon Rapid's right to contribution and indemnification (including costs of defense and attorney's fees) arising from or in connection with persons' and other entities' pending claims and lawsuits against Rapid, or which may arise or be incurred in connection with presently unasserted claims against Rapid, based upon any theory of law, equity or admiralty for, relating to, or arising by reasons of, directly or indirectly, death, personal injuries or personal damages . . . to the extent caused or allegedly caused, directly or indirectly, by asbestos or asbestos-containing products or any other activity or omission or products, goods, minerals or other material or exposure thereto . . . .

(J.A. 44-45). Rapid's claim against the Celotex bankruptcy estate was principally based upon a written agreement entitled "General Assignment & Assumption of Liabilities," (J.A. 52), wherein Celotex's predecessor in interest, New Carey, agreed to indemnify Rapid's predecessor in interest, Glen Alden, for all liabilities and defense costs arising out of Old Carey's merger into Glen Alden and Glen Alden's subsequent transfer of all Old Carey's assets to New Carey (the Indemnity Agreement).

Owens also filed a proof of claim against the Celotex bankruptcy estate. A copy of Owens' proof of claim is not in the record, but Owens represents and Rapid does not contest that Owens' claim sought contribution for liabilities it has borne on behalf of Celotex with respect to asbestos-related injury claims.

4

Turning back to Rapid's Notice of Removal, we note that Rapid took the position that the Contribution Action was a non-core proceeding, and thus, should remain in the district court rather than being referred to the bankruptcy court. In conjunction with its Notice of Removal, Rapid moved to withdraw the automatic reference to the bankruptcy court, see 28 U.S.C. § 157(d), and to dismiss the Contribution Action for lack of personal jurisdiction, see Fed. R. Civ. P. 12(b)(2).

Owens objected to Rapid's removal and sought remand on two bases. Owens contended that the district court lacked subject matter jurisdiction, because the Contribution Action was not related to the Celotex bankruptcy case. See 28 U.S.C. § 1334(b). Owens also contended that equitable grounds such as comity and the state court's expertise in questions of state law warranted remand. See 28 U.S.C. 1452(b).

The district court ordered the bankruptcy court for the Northern District of West Virginia to prepare a report and make recommendations on Owens' motion to remand and Rapid's motion to withdraw the automatic reference. The bankruptcy court did so, recommending that the district court grant Owens' motion to remand the Contribution Action to state court. In the event the district court determined not to remand, the bankruptcy court recommended that the automatic reference be withdrawn. Without conducting a hearing, the district court denied Owens' motion to remand and granted Rapid's motion to withdraw the automatic reference. Finally, the district court granted Rapid's motion to dismiss the Contribution Action for lack of personal jurisdiction. According to the district court, Rapid lacked sufficient minimum contacts with West Virginia to comply with due process requirements. After the district court denied a motion for reconsideration by Owens, Owens noted a timely appeal.

On appeal, Owens does not challenge the withdrawal of the automatic reference, but does challenge the district court's denial of its motion to remand and the district court's dismissal for lack of personal jurisdiction. After initial briefing by the parties in this court, but before oral argument, the bankruptcy court confirmed a plan of reorganization for Celotex (the Confirmed Plan). See In re Celotex, 204 B.R. 586 (Bankr. M.D. Fla. 1996). We requested supplemental brief-

5

ing from the parties regarding what effect, if any, the Confirmed Plan had on the issues on appeal. From this supplemental briefing, we learned that Rapid objected to the treatment of its claim under the Confirmed Plan, and thus, appealed to the district court. Prior to the district court's consideration of the matter, however, Rapid and the Celotex bankruptcy estate reached what Rapid characterizes as a "global settlement of their various differences and disputes, obviating appeal." (Rapid's Supplemental Br. at 3). The bankruptcy court approved this settlement on February 11, 1997.

The Confirmed Plan neither allowed nor disallowed Owens' claim for contribution against the Celotex bankruptcy estate. Rather, it deemed the claim as one against a trust, created by the Confirmed Plan to address, liquidate, resolve, disallow, or allow and pay all the asbestos related claims against the Celotex bankruptcy estate (the Asbestos Claims Trust). See In re Celotex, 204 B.R. at 602. Under the Confirmed Plan, the Asbestos Claims Trust is deemed the successor for all purposes to the liabilities of Celotex with respect to allowed amounts of asbestos related claims. See id. at 619-620. Owens' claim would then be resolved in accordance with the "Asbestos Claims Res-olution Procedures" established by the Confirmed Plan. Id. at 602. We have no knowledge as to the present status of Owens' claim in this process.

For the following reasons, we affirm the district court's denial of Owens' motion to remand and the district court's order dismissing the Contribution Action for lack of personal jurisdiction.

I.

Owens first challenges the district court's denial of its motion to remand the Contribution Action to state court. Before addressing this challenge, however, we must first address the threshold issue raised by Rapid of whether we have the power to review the district court's denial of Owens' motion to remand.

A.

Rapid argues that 28 U.S.C. § 1452(b) expressly precludes our review of the district court's denial of Owens' motion to remand.

6

Rapid is correct with respect to the district court's decision that equitable grounds did not favor remand, but it is incorrect with respect to the district court's refusal to remand for lack of subject matter jurisdiction.

Section 1452 provides, in pertinent part, as follows:

> (a) A party may remove any claim or cause of action in any civil action . . . to the district court for the district where such civil action is pending, <u>if such district court has jurisdiction of such claim or cause of action under section 1334 of this title</u>.

> (b) <u>The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground</u>. An order entered under this subsection remanding a claim or cause of action, or <u>a decision to not remand, is not reviewable by appeal</u> or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b) (emphasis added). The language of § 1452(b) expressly precludes appellate review of a district court's refusal to remand a properly removed action on equitable grounds. However, the plain language of § 1452(b) <u>presumes</u> that removal under § 1452(a) was proper. A proper removal could not occur without the district court possessing subject matter jurisdiction under § 1334. <u>See Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 993 (3d Cir. 1984) (reaching same conclusion in the context of § 1452(b)'s materially similar predecessor, 28 U.S.C. § 1478(b)). If, in fact, a district court does not possess subject matter jurisdiction under § 1334(b), then § 1452(b) "never comes into play, and the absolute prohibition on appellate review over equitable remands which were granted or denied <u>under this subsection</u> . . . never becomes operative." <u>Id.</u> To hold otherwise would suggest the incredulous result that § 1452(b)'s restrictions on appellate review may alter the basic proposition that a challenge to the district court's subject matter jurisdiction may be raised at any time by the parties or the court. <u>See Things Remembered, Inc. v. Petrarca</u>, 116 S. Ct. 494, 499 n.1 (1995) (Ginsburg, J., concurring).

7

In sum, we hold that § 1452(b) precludes us from reviewing the district court's decision that equitable grounds did not favor remand, but does not preclude us from reviewing the district court's decision denying Owens' motion to remand to the extent that Owens' motion rested on the district court allegedly lacking subject matter jurisdiction.

B.

We now consider <u>de novo</u> whether the district court possessed subject matter jurisdiction pursuant to § 1334(b). <u>See In re A.H. Robins Co. Inc.</u>, 86 F.3d 364, 371 (4th Cir.), <u>cert. denied</u>, 117 S. Ct. 483 (1996). As set forth above, § 1452(a) provides for removal of a state action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b), in turn, provides in pertinent part that "the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or <u>related to</u> cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). In <u>Celotex Corp. v. Edwards</u>, 115 S. Ct. 1493, 1499 (1995), the Supreme Court expressed agreement with the view of the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), that by Congress' choice of words in § 1334(b) "`Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . . .'"

In <u>A.H. Robins Co. v. Piccinin</u>, 788 F.2d 994, 1002 n.11 (4th Cir. 1986), we adopted the Third Circuit's test for determining the existence of "related to" jurisdiction. That test, in its entirety, provides:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether <u>the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.</u> Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or

8

> negatively) and which in any way impacts upon the han-
> dling and administration of the bankruptcy estate.

Pacor, 743 F.2d at 994 (citations omitted); see also Celotex, 115 S. Ct. at 1499 n.6 (recognizing that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the Pacor test with little or no variation and the Second and Seventh Circuits have adopted a slightly different test and not choosing one test over the other). Notably, the Pacor test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction. See Pacor, 743 F.2d at 994; see also In re Titan Energy, Inc., 837 F.2d 325, 330 (8th Cir. 1988) ("[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in Pacor.").

Before we apply the Pacor test, we note that if "related to" jurisdiction actually existed at the time of Rapid's removal of the Contribution Action to the district court, Rapid's global settlement with the Celotex bankruptcy estate and the treatment of Owens' claim under the Confirmed Plan could not divest the district court of that subject matter jurisdiction. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (if a federal court possesses subject matter jurisdiction over an action at the time it is commenced, a subsequent event cannot divest the court of that subject matter jurisdiction). Thus, our analysis may not be informed by our knowledge of the Confirmed Plan or Rapid's settlement with the Celotex bankruptcy estate.

Turning to application of the Pacor test here, we conclude that whether Rapid is held liable in the Contribution Action is a question "related to" the Celotex bankruptcy case. First, any recovery by Owens in the Contribution Action would reduce Owens' claim against the Celotex bankruptcy estate for contribution by the same amount, thus altering the liabilities of the Celotex bankruptcy estate. See In re Kaonohi Ohana, Ltd., 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over third-party action because specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy

9

estate); In re Titan Energy, Inc., 837 F.2d at 329-30 (nondebtor claims against third-party insurance company "related to" the bankruptcy under Pacor because recovery would reduce liabilities of the estate). Furthermore, any recovery by Owens against Rapid would impact the handling and administration of the Celotex bankruptcy estate by changing the character of Rapid's indemnification claim against Celotex from contingent and unliquidated to certain and liquidated. This change would obviate the need to estimate the amount of Rapid's claim under Bankruptcy Code § 502(c), which requires that a contingent or unliquidated claim be estimated if the bankruptcy court determines that the fixing or liquidation of a claim would unduly delay the administration of the bankruptcy case. In sum, the outcome of the Contribution Action could conceivably have an effect on the Celotex bankruptcy case. See In re American Hardwoods, Inc., 885 F.2d 621, 623-24 (9th Cir. 1989) (finding "related to" jurisdiction where enforcement of state court judgment by creditor against debtor's guarantors would affect administration of debtor's reorganization plan); In re Brentano's, 27 B.R. 90, 91-92 (Bankr. S.D.N.Y. 1983) ("related to" jurisdiction existed based on a bankruptcy debtor's contractual obligation to indemnify its guarantor who was a defendant in an action for past due rent). Under the Pacor test, this potential effect is all that is required.

Owens argues that no potential for impact exists because prevailing in the Contribution Action would reduce its claim against the Celotex bankruptcy estate by the same amount that it would increase Rapid's claim against it. This argument is flawed. The offset would not be the same. Under the Indemnity Agreement, Rapid is entitled to indemnification from Celotex for costs that it incurs in defending itself in the Contribution Action, whereas Owens, under the American rule, is not. The American rule provides that each party bear the cost of its own attorney's fees unless a statute or agreement provides otherwise. See Key Tronic Corp. v. United States, 511 U.S. 809, 814-15 (1994).

According to Owens, this case is analogous to Pacor, in which the Third Circuit held that a third-party action was not "related to" the bankruptcy case because the defendant only had a common law right to indemnification from the debtor. The court reasoned that a judgment against the defendant in the third-party action could not determine any rights, liabilities, or course of action of the debtor, because

10

neither res judicata nor collateral estoppel could be asserted against the debtor. Significantly, the court specifically distinguished its holding from In re Brentano's, 27 B.R. at 90. In that case, a bankruptcy court found "related to" jurisdiction on the ground that the obligation of reimbursement between the debtor and the defendant in the third-party action was set by contract, which meant that a successful claim against the defendant would automatically result in indemnification liability against the debtor. Pacor, 743 F.2d at 995-96.

We do not believe that Pacor suggests that "related to" jurisdiction does not exist over the Contribution Action. Given that Rapid's proof of claim against the Celotex bankruptcy estate rests on a contractual obligation of indemnity, we believe that the situation before us is more analogous to the situation in In re Brentano's than the situation in Pacor. Furthermore, Owens' claim against the Celotex bankruptcy estate serves as an additional link between the Contribution Action and the Celotex bankruptcy case, a link that was not present in Pacor.

In conclusion, we hold the Contribution Action is"related to" the Celotex bankruptcy case. Therefore, the district court properly exercised subject matter jurisdiction over it.**4**

II.

We next review the district court's decision to dismiss the Contribution Action for lack of personal jurisdiction over Rapid. In this task, we review legal conclusions de novo and any underlying factual

_____

**4** Owens alternatively argues that the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) prohibited the district court from exercising subject matter jurisdiction over this case. That provision mandates that "upon timely motion" the district court abstain from hearing a case in federal court on "related to" jurisdiction if the action is commenced and can be timely adjudicated in state court. We do not address this argument, because Owens waived any right to invoke the mandatory abstention provision of § 1334(c)(2) by failing to make an appropriate motion. See In re Mauldin, 52 B.R. 838, 842 (N.D. Miss. 1985) (refusing to consider whether mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) applied because there was no motion of record for mandatory abstention).

11

findings for clear error. See Mylon Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). Below, the district court concluded that it could not exercise personal jurisdiction over Rapid without violating Rapid's right to due process under the Due Process Clause of the Fourteenth Amendment. Specifically, the district court concluded that Rapid did not have sufficient minimum contacts with West Virginia such that it could be legally subject to personal jurisdiction in that forum.

Owens' attack on the district court's decision to dismiss for lack of personal jurisdiction is two-fold. First, Owens argues that Rapid had sufficient contacts with West Virginia under the successor corporation theory to subject it to personal jurisdiction in West Virginia. Second, Owens argues that the district court committed plain error by failing to recognize that personal jurisdiction existed over Rapid pursuant to Bankruptcy Rule 7004. We address each argument in turn.

A.

In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause. See Mylan Lab., Inc., 2 F.3d at 60. Because the West Virginia long-arm statute is coextensive with the full reach of due process, see Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987), it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction, see, e.g., Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir.) (Maryland forum state), cert. denied, 117 S. Ct. 437 (1996); Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282, 286 n.1 (4th Cir. 1987) (Virginia forum state); Columbia Briargate Co. v. First Nat'l Bank of Dallas, 713 F.2d 1052, 1057 (4th Cir. 1983) (South Carolina forum state). Rather, the statutory inquiry necessarily merges with the Constitutional inquiry. Accordingly, our inquiry centers on whether exercising personal jurisdiction over Rapid is consistent with the Due Process Clause. See Stover, 84 F.3d at 136.

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant

12

has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not "offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Miliken v. Meyer, 311 U.S. 457, 463 (1940)). Later cases have clarified that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958); Stover, 84 F.3d at 136. Moreover, this "purposeful" requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F. Supp. 519, 523 (M.D.N.C. 1996) (citing Burger King, 471 U.S. at 472, and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

When, as here, a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676. "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

Owens' complaint asserted that personal jurisdiction over Rapid existed under the successor corporation liability theory. Under that

13

theory, a non-resident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so by virtue of its succeeding to a corporation that was subject to personal jurisdiction in the forum state. See City of Richmond v. Madison Management Group, Inc., 918 F.2d 438, 455 (4th Cir. 1990) (affirming exercise of personal jurisdiction based on successor liability theory).

According to Owens' complaint, Rapid is the successor corporation of Old Carey. Assuming the validity of this assertion for the sake of argument, Owens still cannot meet its burden of establishing a prima facie showing of personal jurisdiction over Rapid, because the record does not establish that the exercise of personal jurisdiction over Old Carey in West Virginia would comport with the Due Process Clause. Owens does not even allege that Old Carey, an Ohio corporation with its principal place of business in Cincinnati, Ohio, ever purposely directed activities in West Virginia. Rather, Owens' complaint only asserts that Old Carey would be subject to personal jurisdiction in West Virginia by virtue of its asbestos containing products "reach-[ing]" West Virginia "in the normal stream of commerce." (J.A. 7). Owens' assertion is known in personal jurisdiction jurisprudence as the "stream of commerce theory."

Our decision in Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939 (4th Cir. 1994), is dispositive on this issue. In Lesnick, a plaintiff, whose husband had died of mesothelioma, sued a non-resident defendant corporation. The non-resident corporation manufactured the "Micronite Filter" used on a particular brand of cigarettes that the plaintiff's husband smoked. The plaintiff alleged that asbestos incorporated into the filter caused her husband's death. The non-resident defendant corporation had manufactured approximately ten billion such filters with the knowledge that the filters would be incorporated into cigarettes sold throughout the nation. The plaintiff urged that the non-resident corporation was subject to personal jurisdiction in the forum for two reasons: (1) the nonresident defendant corporation placed its filters in the stream of commerce with the expectation that they would be purchased by consumers in the forum state; and (2) the non-resident defendant corporation and the manufacturer of the cigarettes were so closely affiliated that the manufacturer's distribution of its cigarettes into the forum should be attributed to the non-resident defendant corporation. We rejected both theories, making clear that

14

a non-resident defendant may only be subject to personal jurisdiction under the "stream of commerce theory" if that defendant engaged in some activity purposely directed at the forum state. See id. at 945-46. In this regard, we explained:

> The touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state . . . . To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

Id. at 945 (emphasis added).

Here, Owens has not alleged more than the entry of Old Carey products into the stream of commerce with the expectation that they would be purchased in West Virginia. Critically, Owens' complaint is wholly devoid of any allegations that Old Carey engaged in any activity purposefully directed at West Virginia. Thus, under Lesnick, the district court was correct in concluding that Owens' attempt to establish personal jurisdiction via Old Carey fails.[5]

_____

[5] Apparently sensing the weakness of its argument based on the stream of commerce theory, Owens urges us to excuse its failure to even allege that Old Carey engaged in conduct purposely directed at West Virginia on the basis that it was denied the opportunity to develop evidence to that effect. Owens apparently misunderstands its burden in filing a civil action. Both West Virginia Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 8(a) require a plaintiff filing a complaint to include a short and plain statement of the grounds upon which the court's jurisdiction depends. Not surprisingly, Owens offers no authority for the position that it should be relieved of this minimal burden.

B.

We now address Owens' argument that the district court committed plain error by failing to recognize that personal jurisdiction over Rapid existed pursuant to Bankruptcy Rule 7004. In doing so, we will first consider whether Bankruptcy Rule 7004 even provides a basis for personal jurisdiction over Rapid.

We have determined that this case is properly in federal district court on "related to" jurisdiction under § 1334(b). The entire body of Bankruptcy Rules, therefore, applies to this action. See Anderson v. F.D.I.C., 918 F.2d 1139, 1143 n.3 (4th Cir. 1990) (citing Bankruptcy Rule 1001 and holding that Bankruptcy Rules apply to an action in federal district court based on "related to" jurisdiction under 28 U.S.C. § 1334(b)); see also Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1236-37 (3d Cir. 1994) (same); Diamond Mortgage Corp. of Illinois v. Sugar, 913 F.2d 1233, 1240-41 (7th Cir. 1990) (same). Of relevance here, Bankruptcy Rule 7004(d) allows the service of process otherwise permitted under Bankruptcy Rule 7004 to be effected "anywhere in the United States." Of further relevance, Bankruptcy Rule 7004(f) provides that if the exercise of jurisdiction is consistent with the United States Constitution and the laws of the United States, then service in accordance with Bankruptcy Rule 7004 is "effective to establish personal jurisdiction over the person of any defendant with respect to a case . . . related to a case under the [Bankruptcy] Code." (emphasis added). Our review reveals that the requirements of Bankruptcy Rule 7004(f) are met in this case.

On the topic of whether the exercise of personal jurisdiction over Rapid is consistent with the Constitution and the laws of the United States, the question of whether Rapid had minimum contacts with West Virginia is irrelevant. This is so because when an action is in federal court on "related to" jurisdiction, the sovereign exercising authority is the United States, not the individual state where the federal court is sitting. See Diamond, 913 F.2d at 1244 (holding that contacts between defendants and the State of Illinois had no bearing upon whether the district court could exercise personal jurisdiction over defendants in a case in federal district court on "related to" jurisdiction under 28 U.S.C. § 1334(b)); see also In re Am. Freight Sys., Inc., 153 B.R. 316, 321 (D. Kan. 1993); In re B.R. Moran Fin. Corp., 124

16

B.R. 931, 943 (S.D.N.Y. 1991). Rather, we need only ask whether Rapid has minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United States Constitution. See Diamond, 913 F.2d at 1244. Given that Rapid is a Delaware corporation with its principal place of business in New York, we have no doubt that this is the case.

Turning to the service of process requirement of Bankruptcy Rule 7004(f), Rapid does not dispute that it received service of process in accordance with West Virginia Rule of Civil Procedure 4, which rule provides for service of process on a domestic (i.e., United States) corporation in the same manner as Bankruptcy Rule 7004. Compare W. Va. R. Civ. P. 4(d)(5) with Bankruptcy Rule 7004(b)(3). Thus, Rapid received service of process in accordance with one of the methods provided by Bankruptcy Rule 7004.

As Owens recognizes, even though we have concluded that Bankruptcy Rule 7004 provides a clear basis for personal jurisdiction over Rapid, reversal of the district court's dismissal is not automatic. Owens failed to argue the applicability of Bankruptcy Rule 7004 below, thereby forfeiting any resulting error in the district court's dismissal for lack of personal jurisdiction.

While Federal Rule of Criminal Procedure 52(b)**6** affords federal appellate courts the discretion to correct certain forfeited errors in the criminal context, in the civil context such discretion is judicially created. See New York Central R.R. v. Johnson, 279 U.S. 310, 318-19 (1929); Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995); Mondave v. Long Island Jewish Medical Center, 501 F.2d 1065, 1072 (2d Cir. 1974). While the Supreme Court has never specifically articulated a test that a federal appellate court must apply in determining whether it may exercise its discretion to correct a forfeited error in the civil context, it has done so in the criminal context. See United States v. Olano, 507 U.S. 725 (1993). Under Olano, a federal appellate court may exercise its discretion to

_____

**6** Federal Rule of Criminal Procedure 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

17

correct an error not raised below under Federal Rule of Criminal Procedure 52(b), if: (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines, after examining the particulars of each case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings. See Olano, 113 S. Ct. at 1776.

Since Olano, federal appellate courts have wrestled with its applicability in the civil context. The Fifth Circuit has concluded that Olano governs a federal appellate court's "plain error" review in the civil context. See Highlands Ins. v. Nat'l Union Fire Ins., 27 F.3d 1027, 1031-32 (5th Cir. 1994) (applying Olano test in determining whether to consider challenges to jury charges made for the first time on appeal). The Third Circuit and the Sixth Circuit have taken guidance from Olano in determining whether to exercise their discretion to reverse upon finding plain error in the civil context on the ground that the principles and decision in Olano apply a fortiori in the civil context. See Fashauer, 57 F.3d at 1289; Smith v. Gulf Oil Co., 995 F.2d 638, 646 (6th Cir. 1993). At least one other circuit has applied the Olano test in the civil context without expressly saying so. See, Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995). Because we cannot conceive of a reason why an appellant in a civil case should bear a lesser burden for obtaining correction of a forfeited error than an appellant in a criminal case, we hold that, at a minimum, the requirements of Olano must be satisfied before we may exercise our discretion to correct an error not raised below in a civil case. See Fashauer, 57 F.3d at 1289 ("If anything, the plain error power in the civil context--which is judicially rather than statutorily created--should be used even more sparingly."); United States v. Carson, 52 F.3d 1173, 1188 (2d Cir. 1995) (opining that the plain error doctrine should only be invoked with extreme caution in the civil context). We note that our holding is consistent with a pre-Olano Supreme Court decision in a civil appeal, in which the Court recognized its "authority and duty," and presumably that of all federal appellate courts, to "notice federal-court errors to which no exception has been taken, when they `seriously affect the fairness, integrity or public reputation of judicial proceedings.'" Connor v. Finch, 431 U.S. 407, 421 (1977) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). See also Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 164 (4th Cir. 1992) (refusing to address legal theory not advanced below

18

in a pre-<u>Olano</u> civil case, because the new theory did not result in "`plain'" error or a "`miscarriage of justice.'") (quoting <u>Nat'l Wildlife Fed'n v. Hanson</u>, 859 F.2d 313, 318 (4th Cir. 1988)).

Application of the <u>Olano</u> test in this case shows that all of the <u>Olano</u> elements are not satisfied. Even assuming for the sake of argument that the first three elements of <u>Olano</u> are satisfied, several factors strongly weigh against our concluding that the fairness, integrity or public reputation of judicial proceedings will be seriously affected if we do not correct the district court's error. <u>See Olano</u>, 113 S. Ct. at 1776. Owens is a sophisticated party that is well versed in the rigors of civil litigation. A search on Westlaw reveals that Owens has either been a plaintiff or a defendant in at least seven hundred civil cases. Thus, Owens cannot seek to excuse its failure to bring the effect of Bankruptcy Rule 7004 to the attention of the district court on the basis of its unfamiliarity with the litigation forum. Moreover, Owens does not claim that it in any way lacked the opportunity to raise the issue. Furthermore, Owens still has the opportunity under the Confirmed Plan to recover some of its damages from the Asbestos Claims Trust. In sum, we do not believe that the facts here call for us to exercise our discretion to correct an error not raised by the appellant below.

III.

In conclusion, we hold that: (1) we possess appellate jurisdiction to review Owens' motion to remand to the extent that it challenges the district court's subject matter jurisdiction; (2) the district court possessed subject matter jurisdiction over the Contribution Action pursuant to 28 U.S.C. § 1334(b); (3) the district court lacked personal jurisdiction over Rapid under the successor corporation theory; and (4) although the district court possessed personal jurisdiction over Rapid pursuant to Bankruptcy Rule 7004, the facts here do not warrant that we exercise our discretion to correct the forfeited error. Accordingly, we affirm the district court's denial of Owens' motion for remand and the district court's dismissal of the Contribution Action pursuant to Federal Rule of Civil Procedure 12(b)(2).

<u>AFFIRMED</u>

19