**FELMAN PRODUCTION INC.,**
et al., Plaintiffs,

v.

**Boris BANNAI, et al., Defendants.**

**Civil Action No. 3:06–0644.**

United States District Court,
S.D. West Virginia,
Huntington Division.

Oct. 22, 2007.

Alisa Shver, Bruce S. Marks, Gene M. Burd, Thomas Sullivan, Marks & Sokolov, Philadelphia, PA, Courtney Anne Kirtley,

Edward D. McDevitt, Julia A. Chincheck, Kristin A. Shaffer, Bowles Rice McDavid Graff & Love, Charleston, WV, for Plaintiffs.

Daniel P. Shapiro, David R. Lidow, Michael L. Sullivan, Priya Moti Bhatia, Goldberg Kohn, Chicago, IL, Robert M. Stonestreet, W. Henry Jernigan, Jr., Dinsmore & Shohl, Charleston, WV, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

ROBERT C. CHAMBERS, District Judge.

Pending before this Court is Defendant David Biniashvili's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) [Docket No. 66] and Defendant Moskotree Investment Limited's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) [Docket No. 68]. For the following reasons, the Court **GRANTS** the Motions.

Also pending before this Court is Plaintiffs' Motion for Leave to Supplement Plaintiffs' Reply Memorandum to Moskotree Investment Limited's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 102]. For good cause shown, the Court **GRANTS** the Motion and notes that the Court took the Supplemental Reply into consideration in making its determination.

### Facts

Plaintiffs Felman Production, Inc. ("Felman"), Bonham Business Corp., ("Bonham"), Warren Steel Holdings, LLC ("Warren Steel"), Steel Rolling Holdings, Inc. ("Steel Rolling"), Plama Limited ("Plama"), and Stalmag sp. z.o.o. ("Stalmag") filed suit in the Southern District of West Virginia against Borris Bannai ("Bannai"), David Biniashvili ("Biniashvili"), American Steel & Alloys, LLC ("ASA"), and Moskotree Investments Ltd. ("Moskotree") on August 17, 2006 alleging various actions constituting a racketeering scheme. Plaintiffs allege that there were four separate schemes, involving the Polish Plant, the New Haven, West Virginia Plant, the Warren Plant, and the Detroit facility. Plaintiffs assert sixteen counts against various parties, but for the purposes of the Motions to Dismiss at issue, the Court will focus only on the three Counts directed at Biniashvili and the three counts directed at Moskotree. It is important to note that Plaintiffs also assert that Biniashvili is the sole director of Moskotree and that Bannai wholly owns Moskotree.

First, Plaintiffs Warren and Plama assert that both Biniashvili and Moskotree violated Racketeer Influence and Corrupt Organizations Act ("RICO") § 1962(A). Second, all Plaintiffs assert that Biniashvili violated RICO § 1962(C). Third, Stalmag asserts a claim of fraud against Biniashvili and Moskotree. Finally, Plaintiff Stalmag asserts a claim against Moskotree for unjust enrichment.

On November 27, 2006, both Moskotree and Biniashvili filed a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiffs responded that this Court has jurisdiction under Federal Rule of Civil Procedure 4(k)(2) based on Moskotree's contacts or Biniashvili's contacts, respectively, with the United States or, alternatively, that this Court has jurisdiction based on the doctrine of conspiracy theory.

### Discussion

**Personal Jurisdiction**

When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise per-

sonal jurisdiction, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). When, as here, the court addresses the issue of jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.* at 676 (citations omitted). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676 (citations omitted).

■ To establish a prima facie case for personal jurisdiction, the Plaintiff must show (1) that a statute or rule authorizes service of process on the non-resident defendant; and (2) that service on the non-resident defendant comports with the requirements of the Due Process Clause. *In re Celotex Corp.*, 124 F.3d 619, 627. As West Virginia's long-arm statute extends to the full reach of due process, "it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Id.* at 627–28. (citations omitted). Instead, "the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* at 628. Thus, this Court's inquiry focuses on whether exercising personal jurisdiction over the defendant comports with due process.

■ Personal jurisdiction is consistent with the Due Process Clause if the Court determines that a defendant has sufficient "minimum contacts" with West Virginia such that requiring it to defend its interest in West Virginia "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The United States Supreme Court has explained that "minimum contacts" must be "purposeful." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The " 'purposeful' requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws." *Celotex,* 124 F.3d at 628. In other words, a defendant cannot be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or ... [because] of the unilateral activity of another party or a third person." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (citations omitted). This requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Celotex,* 124 F.3d at 628 (internal quotations and citations omitted).

### *Rule 4(k)(2)*

■ Rule 4(k)(2), based on which Plaintiffs claim there is personal jurisdiction over Biniashvili and Moskotree, states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdic-

tion over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. Rule 4(k)(2). "In order to obtain jurisdiction under Rule 4(k)(2), therefore, three requirements must be met. First, the suit must arise under federal law. Second, the defendant must not be subject to personal jurisdiction in any state. Third, the defendant must have contacts with the United States 'consistent with the Constitution and laws of the United States.'" *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005) *citing Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir.2002); Fed. R.Civ.P. 4(k)(2). The third requirement "is founded upon the Due Process Clause of the Fifth Amendment" which "ensures that a defendant has fair warning before it is subjected to the coercive power of the court." *Saudi,* 427 F.3d at 275 *citing to Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. Therefore, "while Rule 4(k)(2) is designed to facilitate obtaining jurisdiction over foreign defendants, it does not operate to relax the requirement that the defendant's contacts with the forum be constitutionally sufficient." *Saudi,* 427 F.3d at 275.

Here, the first requirement that the suit "arises under" federal law is met since the Plaintiffs allege claims based upon RICO, a federal statute. It is unclear whether the second requirement, that Biniashvili and Moskotree not be subject to personal jurisdiction in any state, is met. It is unnecessary for the Court to delve further into this element since the third element, on which the parties focus in their briefs, is so clearly not present.

■ Neither Biniashvili or Moskotree have the requisite minimum contacts to pass constitutional muster and permit this Court to exercise jurisdiction. The contacts that Plaintiffs allege Biniashvili and Moskotree had with the United States and with West Virginia are not their own contacts, so much as those of Bannai or Stalmag. Plaintiffs argue the "minimum contacts" in the context of the four various frauds, and the Court will address each one in turn.

First, Plaintiffs allege that both Moskotree and Biniashvili violated the wire fraud statute, the money laundering statute, and the monetary instrument statute in the context of the Polish Plant. In Plaintiffs' description of "The Polish Fraud," they state that Bannai convinced Plaintiff Stalmag, based in Poland, to prepay $4.35 million, which Stalmag wired through a United States bank to Moskotree in Cypress. However, as explained in Plaintiffs' Complaint, to comport with the international bank clearing scheme, the money was required to go through a United States bank because the transfer was in U.S. dollars. When Defendants did not deliver the ore per the agreement, Plaintiffs allege that they did not return the money as promised. Plaintiffs assert that "Biniashvili, as the sole director of Moskotree, knew about the transaction and the intent not to supply the ore and not to return the $4.35 million prepayment." Plaintiffs further state that this was because Biniashvili and Bannai acted in concert with respect to the misrepresentations. Although the Court will address the allegations of conspiracy as a basis for personal jurisdiction below, it is clear that Plaintiffs' allegations are not directed at Biniashvili, but at Moskotree— the company that *received* the money via wire transfer. Even though Biniashvili is the director of the company, it does not automatically mean that he had knowledge of or participated in the wire transfers. In fact, the bulk of Plaintiffs' description

of "The Polish Fraud" focuses on Bannai's actions and Stalmag's wire transfer, not Biniashvili's or Moskotree's actions. Solely being the director of Moskotree, if true, does not put Biniashvili on notice or give him fair warning that he may be subject to the laws of the United States. And Moskotree solely receiving money in Cypress from a company in Poland, via a wire transfer does not put Moskotree on notice that it may be subject to the laws of the United States.

Plaintiffs point out that several courts have held that use of a wire transfer through a United States bank is sufficient to establish minimum contacts. The cases cited by Plaintiffs, however, demonstrate that courts have held that there are minimum contacts sufficient for personal jurisdiction when an action performed elsewhere has an effect in the United States and when the actions consist of *more* than a single wire transfer. In *Madanes,* the court found that the defendants transacted business in New York, committed predicate acts in New York, communicated through mail and wires with another party in New York, and authorized that individual to act on his behalf in New York and elsewhere. *Madanes v. Madanes,* 981 F.Supp. 241, 260–261 (S.D.N.Y.1997). And, in *Herbstein,* the defendant mailed letters and documents with fraudulent statements via wire in the U.S. and their actions affected a corporation in which the defendant a New York resident each owned a one half interest. *Herbstein v. Bruetman,* 768 F.Supp. 79, 82 (S.D.N.Y. 1991). Thus it was reasonable for the defendant to expect to be haled into court. *Id.* at 82. Here, however, there was only one wire transfer, which was from Poland to Cypress, and not to, or from, the United States. Complaint p. 9 ¶ 35; Def. Biniashvili's Reply Mem. in Supp. of Mot. To Dismiss for Lack of Personal Jurisdiction p. 4–5. The sole reason the money went through the United States is because the transfer was with U.S. dollars. Complaint p. 9 fn 1.

Second, Plaintiffs allege that there was a West Virginia fraud based upon the sale of the New Haven Plant in New Haven, West Virginia. The plaintiffs' description of the fraud boils down to the allegation that Bannai convinced Plaintiffs to purchase the New Haven plant and that Northgate, owned by Bannai, contracted with Bonham to supply manganese ore to the New Haven Plant. After this agreement was made among the parties, Bannai convinced the parties that he needed a one million dollar advance payment to finance the shipment of ore. There are no allegations directed at Biniashvili or Moskotree and no allegations that connect Biniashvili or Moskotree with this "West Virginia Fraud."

Third, Plaintiffs describe "The Related Ohio Fraud" which consists of allegations directed at Bannai—namely, that he caused ASA to enter into agreements that should have been entered into under Warren Steel's name and that Bannai misrepresented his relationship with ASA when in the process of contracting. Additionally, the allegation states that Bannai obtained a letter by false pretenses, stating that he owned half of Warren Steel and Plama. The claims there are not directed at Biniashvili or Moskotree.

Finally, Plaintiffs assert that in the "Related Detroit Fraud" Bannai misrepresented that there were two other companies bidding on the Detroit Cold Rolling steel facility in an effort to encourage one of the plaintiffs to bid $20 million for it. The claim here focuses on Bannai's actions, not on Biniashvili's actions or Moskotree's actions.

Plaintiffs' allegations are insufficient to show that either Biniashvili or Moskotree

had the requisite minimum contacts with the United States so that the assertion of jurisdiction over either of them would not "offend the traditional notions of fair play and substantial justice."

## Conspiracy Theory of Jurisdiction

Alternatively, Plaintiffs argue that the Court has jurisdiction over Biniashvili and Moskotree based on the conspiracy theory of personal jurisdiction. As Plaintiffs note, the "conspiracy theory of jurisdiction" states that,

> when several individuals (1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum.

*Southeastern Construction, Inc. v. Tanknology–NDE International Inc.,* 2005 WL 3536239 at *9 (S.D.W.Va.2005). In other words, "when individuals join in a conspiracy the acts of one conspirator are attributable to the co-conspirator" so that if one co-conspirator's actions would constitute sufficient minimum contacts for the purposes of personal jurisdiction, then the other coconspirator would also be subject to jurisdiction. *McLaughlin v. Copeland,* 435 F.Supp. 513, 530, 532 (D.Md.1977). In recognizing the doctrine of personal jurisdiction based upon a conspiracy, this Court also ensured that exercising jurisdiction over the party at issue did not "offend the traditional notions of fair play and substantial justice." *Southeastern Construction,* 2005 WL 3536239 at *11–12.

Plaintiffs state that Biniashvili "participated in the RICO conspiracy," and "as the sole director of Moskotree, knew about the transaction," and that he "could have reasonably expected that his acts in furtherance of the conspiracy could lead to consequences in the United States." Plaintiffs also state that he "must have been aware" of the scheme to engage in fraudulent conduct. They then assert that both Bannai and Biniashvili were associated with Moskotree and "conspired together" and "acted in concert" with respect to the alleged misrepresentations. These allegations are conclusory and do not include any factual basis for alleging that Biniashvili or Moskotree were participants in the conspiracy. Plaintiffs do not describe any contact between Biniashvili, and Bannai, aside from their alleged roles in Moskotree.

Bannai's actions with respect to the Polish fraud are also insufficient to confer jurisdiction on that basis alone. *Southeastern Construction,* 2005 WL 3536239 at *9 (stating that the coconspirator's actions must be sufficient to establish jurisdiction over him under the state's long-arm statute; "[O]nly if the overt acts are sufficient to establish long-arm jurisdiction over the conspirator who committed the acts would it be fair to subject to personal jurisdiction the other co-conspirators who are merely 'deemed' to have committed the overt acts."). The negotiations for the sale of the Polish plant took place in Geneva, the companies involved were in Poland and Cypress, and the Polish company wired the money through a U.S. bank to the defendant company. All of the actions took place on foreign soil and do not connect Bannai and the Polish transaction with the United States.[1] Since the contacts be-

---

1. Of course, even though Bannai's actions with respect to the Polish plant do not constitute sufficient minimum contacts with the United States, his subsequent actions and connections with the U.S. are ample for this Court to assert jurisdiction over him.

tween Bannai, the Polish transaction, and the United States are insufficient to confer jurisdiction over him, the conspiracy theory of personal jurisdiction cannot be used to gain jurisdiction over Biniashvili or Moskotree for the actions of their alleged coconspirator.

Even if the Court accepts that Bannai's actions were "overt acts" sufficient to confer jurisdiction over him, there are simply no factual allegations of conspiracy between Bannai, Biniashvili, and Moskotree such that subjecting Biniashvili or Moskotree to jurisdiction in this forum would comport with the constitutional Due Process requirements. As noted above, both Biniashvili's actions and Moskotree's actions in the United States were insufficient to meet the minimum contacts requirements such that either would be put on notice that they may be subject to jurisdiction in the United States. Because of this, subjecting them to jurisdiction would certainly offend the traditional notions of fair play and substantial justice.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant David Biniashvili's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) and Defendant Moskotree Investment Limited's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R.Civ.P. 12(b)(2). The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties, and to publish this order on the Court's website.